Ronald E. Coleman, J.
Claimants ’ property was located on Washington Street approximately one and one-half miles northerly of the intersection of Route 33 and Washington Street in the Village of Churchville. It consisted of 314± acres with a frontage of 4600± feet available for strip residential development and presently used as farm homesite frontage on Washington Street. The appraiser for the claimants appraised all of their property and the appraiser for the State appraised only that property located on Washington Street and not the property located on the side roads which admittedly was not affected by the appropriation. This accounts for the difference in the total before acreage considered by the two appraisers. We have used the total acreage of 314± acres as testified to by the claimants ’ appraiser. On the property were a dairy bam together with other buildings used in a dairy operation all in good condition, a main house in fair condition, a cottage, a tenant house and other buildings in poor condition. The State appropriated 1.198± acres from the frontage adjacent to Washington Street.
The property consisted of 31± acres woods, 45± acres wasteland, 21± acres computed by us farm site and available strip residential property to a depth of 200± feet with a frontage of 4600± feet (550'± feet developed as home and farm site and 4050± feet strip residential) and 217± acres of tillable *370 land. The appraiser for the claimants placed an agricultural value on all the property to which he then added an increment to arrive at his value for land available for strip residential development. The appraiser for the claimants made a breakdown of the acreage according to the types of land and placed an acreage value on the land based on an analysis of his comparable sales. The appraiser for the State in both his before and after values for land as well as buildings placed on the whole property a merged acreage value of $600 an acre which represented the value of 'both the land and buildings.
The State’s appraiser testified that the $600 an acre included $325 an acre for the merged value of land alone. The difficulty with the State’s appraisal was that the merged value on land o.f $325 an acre was attributed to each and every acre of the farm without giving any consideration to the type of land actually involved here which included woods, wasteland, tillable land and building sites. He did this using comparable sales, using these to arrive at a merged acreage value which he did by dividing the total sale price by the number of acres involved without regard to types of land and buildings. In his appraisal he placed a value of some $60,000 on the buildings which is considerably more than the value placed on the same buildings by the claimants’ appraiser. The record does not support this value shown in his appraisal and after he made an upward adjustment in the claimants’ acreage on the trial he did not give any other value for the buildings. Were we to follow the method used by him, the value of the buildings would have to be increased considerably by reason alone of the additional acres used. Inasmuch as we have found no consequential damages to the buildings themselves, we mainly discuss that part of his appraisal and testimony dealing with the value of the land.
An analysis of his appraisal and testimony as to land values considering the various types of land involved in the comparable sales as well as in claimants’ property, clearly demonstrates that the value of the land adjoining the road was considerably more than $325 ah acre. This readily can be seen by taking the farm as 314 ± acres as found by us instead of the 210± acres used in his appraisal corrected by him to 277± acres on the trial and multiplying the 314± acres by his $325 an acre which would produce a land value of $102,050. It would also produce a total value of $188,400 of which $86,350' would be building values, all of which would be highly excessive. In arriving at his before and after values as well as his damages, he considered the frontage to be farm land. This is more *371 than the $91,428 for land testified to by the claimants ’ appraiser who included therein an increment for the frontage of some $20 and $10 a front foot added to his farm land value. "While in our opinion the claimants’ appraisal could have been presented in a clearer manner, it is possible by examining several pages together and taking his testimony to determine how he arrived at his values.
The method used by the State’s appraiser makes it impossible for us to determine exactly what his value was for the various types of land involved in this claim when given only one merged value -on all the land in respect to both the comparable sales and the claimants. Obviously, here on all the credible evidence the woods, wasteland, tillable land and frontage land cannot be said to have exactly the same value, that is, $325 an acre. In our opinion the method used by the State’s appraiser renders his appraisal of little probative value and certainly furnishes us with little or no assistance in arriving at a decision.
To begin with in our opinion the use of a merged acreage value is an improper method of appraisal in this court. (Cf. Latham Holding Co. v. State of New York, 16 N Y 2d 41.) Further, in our decision we must make an acreage breakdown of the types of land and land values as found by us, we must explain in considerable detail how we arrived at our before and after values as well as the damages and failure to do so is to assure a prompt reversal of our decision on appeal and a new trial. (Spyros v. State of New York, 25 A D 2d 696; Moran v. State of New York, 29 A D 2d 705.) Often it would appear in claims tried in the Oourt of Claims that some appraisers and attorneys do not fully appreciate the fact that under present authorities the powers of the appellate courts to review an award made by this court are not the same as in the case of an award made by Commissioners of Appraisal in a condemnation proceeding (see Matter of Huie [Fletcher-City of New York], 2 N Y 2d 168, 171; also City of Niagara Falls v. New York Cent. R. R. Co., 31 A D 2d 780 ; City of Binghamton v. Koffman, 28 A D 2d 1071).
At one time the courts on appeal were reluctant to disturb an evaluation made by the Court of Claims unless it was either excessive or inadequate or based on errors in law. In Messina v. State of New York (2 A D 2d 802 [4th Dept.]) the court said: “ We recognize the general rule that a finding of value made in a condemnation proceeding may not be set aside unless, among other things, it appears that the lower court has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive *372 or inadequate”. In Katz v. State of New York (10 A D 2d 164, 166 [3d Dept.]) the court said: “ We recognize the general rule that on a question of quantum appellate courts are reluctant to disturb the evaluation of the trial court. However, that rule is not without exceptions, and if the evaluation is clearly inadequate it is erroneous.” This statement of the rule was quoted by the same court in Albany Country Club v. State of New York (19 A D 2d 199, 202, affd. 13 N Y 2d 1085). It was considered that in determining just compensation no single element was controlling and it Avas competent to consider all things which a seller and a buyer would consider on a sale in arriving at the fair market value of a property as of the date of the appropriation. (Banner Milling Co. v. State of New York, 240 N. Y. 533, 543; Matter of Huie, supra, p. 171.) However, recently the decisions indicate that little reliance may be placed on reproduction costs less depreciation and that comparable sales are to be used to arrive at value. (Guthmuller v. State of New York, 23 A D 2d 597; Fredenburgh v. State of New York, 26 A D 2d 966.) The result has been that appraisers are now testifying before us using comparable sales to which they have made widely varying adjustments to arrive at a value placed by them on a given property. Often, the adjustments made are given to us in a tabulated form with little more explanation and even in some cases the appraisers are unable to explain their adjustments other than to say that they merely are based on their opinion. (Cf. Tilo Co. v. State of New York, 25 A D 2d 795; also, see, discussion on Market Data in The Appraisal Journal, July, 1966, p. 365 and April, 1967, p. 181, published by American Institute of Real Estate Appraisers.)
We have discussed these matters here for the reason that if we are to be able to make a decision in the form expected of us, we must have proof on which Ave can explain adjustments made by us in the event that we do not accept one or the other of the appraisals before us. In discussing the proof as to comparable sales, in a recent claim and at the same time citing Katz (supra) the court said: “ Conspicuously absent is the raw factual data from which a reviewing court can determine whether the transaction relied on is truly comparable and additionally the propriety of whatever adjustments have been made.” (County of Warren v. State of New York, 29 A D 2d 717 [3d Dept.].) The failure of the litigants to furnish the courts with the essential proof and in absence of having done so) the courts endeavoring to decide claims on what proof there was before it has contributed to an increase in the number of *373 appeals being taken from appropriation awards made in the Court of Claims. The problem of the lawyer and the appraisal process recently was discussed in an article written by an attorney actively engaged in the trial of claims in the Court of Claims as well as other courts. (The Appraisal Process, by David M. Levy, N. Y. State Bar J., Feb. 1969, pp. 108-114.) His comments and suggestions deserve consideration.
As a bare minimum today we must have before us detailed proof on which we can make our decision. Rightly so we may not make an independent appraisal unsupported by the record (Matter of City of New York [A. & W. Realty Corp.], 1 N Y 2d 428, 432). The merged acreage method used by the State’s appraiser makes it impossible for us to determine except by speculation what his respective values are and to render a decision on such proof alone. Both appraisers could have given us more assistance and once again we are placed in the position of attempting to evaluate a property on what proof there is in the record before us as best we can. (Brocka v. State of New York, 31 A D 2d 852.) In our opinion there is sufficient evidence in this record on which we were able to determine various land values and the damages making use of the proof adduced by the claimants’ appraiser together with our independent analysis of the substantial data underlying his appraisal and the comparable sales in the State’s appraisal. (Fleetwood Maple Corp. v. State of New York, 28 A D 2d 1026; Kastelic v. State of New York, 29 A D 2d 803.)
We find that the highest and best available use of claimants’ property was for agricultural use, that is a dairy farm as being so operated and the frontage for a farm home and building site as well as strip residential use for the available street frontage found by us to a depth of 200± feet. We find that the before value of the frontage was $10 a front foot, the tillable land $200 an acre, wasteland $5 an acre and woods $50 an acre. While in our opinion we are not required in this claim to place an increment on the frontage for residential use over and above its value for agricultural use as done by the claimants for the reason that this is its present highest use, we have done so. (Munro v. State of New York, 30 A D 2d 1002; cf. Golden Park Realty Corp. v. State of New York, 28 A D 2d 605; Holl v. State of New York, 30 A D 2d 592.) The increment placed on the frontage by us for residential use would be the difference between the value of the land at $200 an acre for tillable land and the value of the land at $10 a front foot. By giving what the increment would be, we do not intend to imply that we followed the approach used by the claimants’ *374 appraiser instead of finding as discussed above one value only for this property of $10 a front foot based on the residential use.
We have been aided in arriving at the values placed on claimants’ property and the damages sustained as a result of the appropriation by our view of the property. (Wagner v. State of New York, 25 A D 2d 814; cf. Matter of City of New York [A. & W. Realty Corp.], 1 N Y 2d 428, supra.) We find that the before value of the land was homesite together with other residential frontage $46,000, tillable land $43,400, woods $1,550, wasteland $225, for a total land value of $91,175. We find that the value of the buildings was $45,000 and that the buildings were not affected by the appropriation. We find that the total before value of claimants’ property was $136,175, the after value $130,450 and the damages $5,725.
As a result of the appropriation 550± feet of road frontage in front of the claimants’ home and barn site, together with 400± feet additional road frontage northerly and adjacent to the farm, were affected by the appropriation by reason of the fact that the road was raised 5 to 6 feet above the remaining adjoining land and a drainage ditch constructed along this frontage. We find that the frontage land was consequentially damaged in the amount of $4,500, the value of the land appropriated was $367 and the value of the land improvements appropriated $858 as shown by the State’s appraisal. Under a separate decision herewith we have made an award to the claimants in the amount of $5,725.